S T A T E   O F   M I C H I G A N

IN THE 60TH DISTRICT COURT FOR THE COUNTY OF MUSKEGON

THE PEOPLE OF THE STATE OF MICHIGAN,

v

DEREK JAMES RAINBOLT,

                          Defendant.
_____/

District Court File
Number 14-157092-FY

Circuit Court File
Number 14-064458-FH

PRELIMINARY EXAMINATION
and
DEFENDANT'S MOTION TO REDUCE BOND

BEFORE THE HONORABLE HAROLD F. CLOSZ, III, DISTRICT JUDGE

Muskegon, Michigan - Wednesday, July 2, 2014

APPEARANCES:

For the People:           MISS CHRISTINA E. JOHNSON (P76893)
                          Assistant Prosecuting Attorney
                          Muskegon County Prosecutor's Office
                          990 Terrace Street
                          Muskegon, MI 49442
                          (231) 724-6435

For the Defendant:        MISS PAULA A. BAKER (P49354)
                          Attorney at Law
                          141 East Apple Avenue
                          Muskegon, MI 49442
                          (231) 724-6585

RECORDED AND
TRANSCRIBED BY:           LORI KING (CER 6092)
                          Certified Electronic Recorder
                          (231) 724-6330

SEP 16 2015
COURT OF APPEALS
THIRD DISTRICT

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

CALENDARED

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 2 of 301

1

# TABLE OF CONTENTS

2

3  <u>WITNESSES:  PEOPLE</u>                                              PAGE

4  ALYSSA WARD

5          Direct examination by Miss Johnson              6
          Cross-examination by Miss Baker               13
6
   Defendant's Motion to Reduce Bond                     24
7

8

9  <u>WITNESSES:  DEFENDANT</u>

10 NONE

11

12
   <u>EXHIBITS:</u>                              IDENTIFIED   RECEIVED
13
   NONE
14

15

16

17

18

19

20

21

22

23

24

25

**LORI KING, CER 6092**
**OFFICIAL COURT RECORDER - 60TH DISTRICT COURT**
**MUSKEGON, MICHIGAN**

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 3 of 301*

1          Muskegon, Michigan

2          Wednesday, July 2, 2014 - 9:26 a.m.

3          THE COURT:  This is file 14-157092-FY.  State of

4     Michigan versus Derek James Rainbolt.  Date and time set for a

5     preliminary examination, or is it?  It's a prelim as well as a

6     Motion.  Deal with the prelim first.

7          Miss Johnson on behalf of the People, and Miss Baker

8     on behalf of the Defendant.  Are the People ready to proceed?

9          MISS JOHNSON:  Yes, Your Honor.

10         THE COURT:  Defense ready to proceed?

11         MISS BAKER:  I am, Your Honor.  I would just move to

12    sequester any potential trial witnesses in this matter.

13         MISS JOHNSON:  Judge, the People would oppose that

14    motion.  If -- if the witnesses are here, they are not here to

15    testify at prelim.

16         THE COURT:  Is this a remand?

17         MISS JOHNSON:  It is, Your Honor.

18         MISS BAKER:  It is, Your Honor.

19         MISS JOHNSON:  And I do have a proposed Amended

20    Information.

21         THE COURT:  The -- well, okay, what's the proposed

22    Amended Information?

23         MISS JOHNSON:  It's charging CSC First Degree.

24         THE COURT:  The -- okay, somebody want to fill me in

25    on what's going on here?  This case apparently was previously

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

1    waived.

2              MISS BAKER:  It was waived by other counsel, Your

3    Honor.

4              THE COURT:  It was.  It was waived by retained

5    counsel, went up to circuit court, and now it's back down.

6              MISS JOHNSON:  Yes.

7              THE COURT:  Is there a particular reason?  What's

8    going on?

9              MISS JOHNSON:  Your Honor, it was originally charged

10   as a CSC Third Degree by the People with the hope of a resolu-

11   tion.  We got up to the eve of trial.  There was no resolution

12   on that charge so we have now -- we filed a Geoke Motion in

13   front of Judge Marietti to amend the Information to a CSC

14   First Degree which is the proper charge in this case --

15             THE COURT:  Got you.

16             MISS JOHNSON:  -- according -- you know, which I'll

17   prove is the proper charge today, I guess.  And Miss Baker

18   requested it be remanded for preliminary examination on the

19   Amended Information.

20             THE COURT:  Okay, is that right?

21             MISS BAKER:  That's a fair statement of what's going

22   on.  I just would indicate that they had filed a list of

23   witnesses who would be testifying at trial, Your Honor, and I

24   think that their observation in listening to the prelim

25   testimony would unfairly prejudice my client; so, I'd ask that

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 5 of 301

1    they not be allowed to be in the courtroom during the course

2    of this hearing.

3         THE COURT:  The -- I'm going to have all prospective

4    witnesses have a seat in the hall.

5         MISS JOHNSON:  Your Honor, may I be heard as to one

6    of the particular witnesses?  One of the witnesses is Miss

7    Diane Adams.  She is the therapist that has been treating the

8    victim in this case, Alyssa Ward.  I do have her listed on my

9    trial witness list.  She obviously has no first-hand knowledge

10   of what happened.  I don't believe any of her testimony could

11   be influenced by hearing the victim's testimony today as she's

12   heard the victim's version of events I'm sure multiple times,

13   and she is here today in the capacity of support for the

14   victim as she testifies.

15        MISS BAKER:  Your Honor, as much as I -- I appre-

16   ciate the sensitive nature of this particular case, we are

17   dealing with a teenage girl who has, by her own admission, a

18   history of lying about sexual acts.  And Miss Adams was added

19   just on the eve of trial as a potential trial witness, and I

20   think that we can't prospectively project what we think the

21   witness is going to testify, and Miss Johnson's belief about

22   whether Miss Adams' testimony can be influenced by testimony

23   heard in the courtroom is just that.  A belief.  And I think

24   we need to preclude any potential prejudice to my client.

25        THE COURT:  I am going to maintain that any and all

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 6 of 301

1    witnesses including your -- I'm sorry, who was it?

2              MISS JOHNSON:  Diane Adams.

3              THE COURT:  -- Miss Adams be excluded from the

4    courtroom.

5              MISS BAKER:  Thank you, Your Honor.

6              THE COURT:  The -- so, all witnesses or prospective

7    witnesses have a seat in the hallway and don't talk about your

8    testimony with anyone.

9              (At 9:30 a.m., witnesses sequestered)

10             THE COURT:  Okay, with that, Miss Johnson, you want

11   to call your first witness?

12             MISS JOHNSON:  Thank you, Your Honor.  The People

13   call Alyssa Ward.

14             THE BAILIFF:  Raise your right hand, please.  In the

15   matter now pending before the Court, do you solemnly swear or

16   affirm to tell the truth, the whole truth, and nothing but the

17   truth, so help you God?

18             MISS WARD:  I do.

19             THE BAILIFF:  Please have a seat and state your full

20   name for the record and spell your first and last.

21             THE WITNESS:  Alyssa Ward.  A-l-y-s-s-a W-a-r-d.

22                            ALYSSA WARD

23   (At 9:31 a.m., called as a witness, testified as follows)

24                        DIRECT EXAMINATION

25   BY MISS JOHNSON:

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 7 of 301*

```
 1   Q    Alyssa, how old are you?

 2   A    Sixteen.

 3   Q    What's your date of birth?

 4   A    January 6th, 1998.

 5   Q    Alyssa, do you know somebody by the name of Derek Rainbolt?

 6   A    Yes.

 7   Q    Who is he?

 8   A    My father.

 9   Q    Do you see him in the courtroom today?

10   A    Yes.

11   Q    Can you please point to him and tell me what he's wearing?

12   A    A jumper.  (Whereupon witness indicated)

13            MISS JOHNSON:  Your Honor, may the record reflect

14        the witness has identified the Defendant?

15            THE COURT:  It will.

16   BY MISS JOHNSON:

17   Q    Alyssa, do you know what you are here to talk about today?

18   A    Yes.

19   Q    What are you here to talk about today?

20   A    The rape.

21   Q    Before we talk about the details of that, I want to ask you

22        where did that happen?

23   A    At his computer shop, Computers Plus.

24            THE COURT:  I'm sorry.  What, ma'am?

25            THE WITNESS:  His old computer shop, Computers Plus.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

1  BY MISS JOHNSON:

2  Q    Alyssa, is that located -- was that located at 4759 Airline

3       Road?

4  A    Yes.

5  Q    Is that address -- is that in the Fruitport Township in the

6       county of Muskegon, state of Michigan?

7  A    Yes.

8  Q    And the event that we are going to be talking about, when did

9       that happen?

10 A    When I was in eighth grade.

11 Q    Alyssa, what grade did you just finish?

12 A    Tenth.

13 Q    And so eighth grade would have been the school year of the

14      2011-2012 school year, is that right?

15 A    Yes.

16 Q    And you would have been 13 when you entered eighth grade?

17 A    Yes.

18 Q    And turned 14 in January of eighth grade?

19 A    Yes.

20 Q    Okay, do you remember when in eighth grade this event

21      happened?

22 A    It happened over a school break.

23 Q    Do you remember which school break?

24 A    No.

25 Q    Okay, on the day that this event happened, were you staying

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 9 of 301*

```
 1        with your dad?
 2   A    Yes.
 3   Q    How did you get to the computer shop?
 4   A    We were at the trailer and Sarah needed to work so the girls
 5        needed to go to her mom's house.
 6   Q    Who is Sarah?
 7   A    My stepmom.
 8   Q    Okay, so, who -- how did the girls get to her mom's house?
 9   A    They went with Sarah.
10   Q    Okay, and so then who was at the trailer?
11   A    Me and my dad.
12   Q    And what happened while you and your dad were at the trailer?
13   A    He said he needed to go clean up his shop so it could open the
14        next day.
15   Q    Did you go with him to the shop to clean it?
16   A    Yes.
17   Q    Okay, can you tell me about the layout of that shop?
18   A    It was a big -- the big main area and then there was a small
19        office in the back and off to the side --
20   Q    Okay.
21   A    -- there was a open area with a bathroom to the side.
22   Q    Okay, what's in that back room?
23   A    The back room without the door separating it there was air
24        mattresses and pop bottles and a bunch of garbage.
25   Q    Why were there air mattresses in the back room of the shop, if
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 10 of 301

```
 1       you know?
 2   A   Why?
 3   Q   Yes.
 4   A   Because he was sleeping there.
 5   Q   What happened when you went there to the shop?
 6   A   We cleaned up the shop for a few hours.
 7   Q   Okay, and at some point were you playing a computer game or
 8       watching TV in the back room?
 9   A   Yes.
10   Q   Okay, what happened while you were watching -- was it -- was
11       it a computer game or was it TV?
12   A   It was Netflix on the computer.
13   Q   Okay, Netflix on the computer.  Okay.  What happened while you
14       were watching Netflix?
15   A   He came back and said that we were sleeping at the shop
16       because he had to be up early anyway.
17   Q   And when you say "he", you mean your dad?
18   A   Yes.
19   Q   Okay, how did you react when he said you were sleeping at the
20       shop?
21   A   I was confused.  I thought we were going back to the trailer.
22   Q   Did you -- well, what happened after he said that?
23   A   He turned off the lights and told me I had to lay on the air
24       mattress.
25   Q   And did you do so?
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 11 of 301*

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | Okay, what happened when you were laying on the air mattress? |
| 3 | A | I continued watching Netflix and then he removed his shirt and |
| 4 | | laid down which I thought was normal because I didn't think |
| 5 | | anything of it at first. |
| 6 | Q | How many air mattresses were in the back room? |
| 7 | A | One. |
| 8 | Q | So, did he lay down on the same one that you were on? |
| 9 | A | Yes. |
| 10 | Q | Okay, what happened then? |
| 11 | A | I'm sorry. |
| 12 | Q | It's okay.  Take your time. |
| 13 | A | He told me to get comfortable and to take off my jean shorts |
| 14 | | because they weren't going to be comfortable to sleep in. |
| 15 | Q | Did you do so? |
| 16 | A | Yes. |
| 17 | Q | What happened next? |
| 18 | A | We laid on the air mattress and continued watching Netflix |
| 19 | | until he started to move closer, and he put his arms around me |
| 20 | | which at first I didn't think anything of it, and then it |
| 21 | | escalated, and he got up, and he went into the bathroom, and |
| 22 | | he changed, and he came back out in his boxers and laid back |
| 23 | | down. |
| 24 | Q | What happened when he laid back down? |
| 25 | A | At first he just continued to have his arms around me and then |

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 12 of 301

1      he moved onto his back and told me to stand up.

2   Q   Did you stand up?

3   A   Yes.

4   Q   What happened when you were standing?

5   A   He told me to remove my underwear.

6   Q   Did you do that?

7   A   Not at first.

8   Q   What did he do when you didn't do it at first?

9   A   He told me to hurry up and take them off.

10  Q   What happened next?

11  A   I was scared, and then I did what he told me to do and I --

12      and then he told me to move back onto the air mattress over

13      him.

14  Q   And did you do that?

15  A   Yes.

16  Q   What happened when you moved over him?

17  A   He grabbed my hips and pulled me down on top of him.

18  Q   When you were on top of him, what was he wearing?

19  A   He had pulled his boxers down.

20  Q   At that time, did he penetrate you?

21  A   Yes.

22  Q   Okay, when I say that, can you describe what exactly happened

23      there?

24  A   Penis going into a vagina.

25  Q   Okay, how long did that last for?

**LORI KING, CER 6092**
**OFFICIAL COURT RECORDER - 60TH DISTRICT COURT**
**MUSKEGON, MICHIGAN**

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 13 of 301

```
 1   A    I don't know.

 2   Q    Did he say anything?

 3   A    No, not until he stopped and he told me to stand up and go

 4        clean up in the bathroom.

 5   Q    Okay, did he say anything else at that time?

 6   A    Not until I came back out of the bathroom.

 7   Q    Okay, what did he say when you came back out of the bathroom?

 8   A    He told me that I couldn't tell anybody because I know what

 9        would happen.

10   Q    Did he elaborate any further on what would happen?

11   A    No.

12   Q    Okay, what did you think he meant by that?

13   A    That I would be in trouble.

14   Q    Okay, thank you, Alyssa.  I don't have any more questions for

15        you today.

16                    THE COURT:  Miss Baker?

17                       CROSS-EXAMINATION

18   BY MISS BAKER:

19   Q    Miss Ward, this was a school break.  What kind of school --

20        school break was it?

21   A    It wasn't a weekend.  It was like when you have the days off

22        school like spring break or Christmas break.  I don't know

23        which one.

24   Q    You don't remember what the weather was like outside?

25   A    No.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 14 of 301

```
 1  Q   Well, you said that you were wearing jean shorts, right?

 2  A   Yes.

 3  Q   So, it wouldn't have been Christmas break?

 4  A   No.

 5  Q   Okay, so, do you recall what time of year this happened?

 6  A   No.

 7  Q   Now, you started out at the trailer with Sarah and the other

 8      girls?

 9  A   Yes.

10  Q   Now, was there only one car that they used?

11  A   No.

12  Q   They had two?

13  A   There was a van and a white car.

14  Q   And isn't it true that your dad would go pick up Sarah from

15      work?

16  A   On occasion.

17  Q   Isn't it true that you stopped seeing your dad in -- in 2012,

18      correct?

19  A   I seen my dad off and on because he didn't come around.

20  Q   Isn't it true that you only visited with your dad two times in

21      2012?

22  A   No.

23  Q   Is it also true that every time you saw your dad in 2012, you

24      were with Sarah --

25  A   I don't know.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 15 of 301*

1  Q    -- his fiancé?

2  A    I don't know.

3  Q    You don't know or you don't remember?

4  A    I don't remember.

5  Q    Now, you had very limited contact with your father from 2010

6       to 2012, right?

7  A    Yes.

8  Q    Most of your visits occurred during Christmas and your birth-

9       day, right?

10 A    No.

11 Q    Would it also be fair to say that most of your visits were to

12      Mr. -- to Sarah and his -- and their daughters?

13 A    Excuse me?

14 Q    From 2010 to 2012, would it be fair to say that most of your

15      visits to your dad or with your dad involved Sarah and the two

16      girls?

17 A    Yeah.

18 Q    And would you also agree that there was very little time that

19      you were alone with your dad during that time?

20 A    I was hardly there; but when I was, there were times I was

21      alone with him.

22 Q    And you are certain that this happened during your eighth

23      grade year, correct?

24 A    Yes.

25 Q    So, 2012?

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 16 of 301

```
 1  A    Whatever year that was.

 2  Q    How big was this air mattress in the back room?

 3  A    A twin size.

 4  Q    A twin size --

 5  A    Twin or --

 6  Q    -- air mattress?

 7  A    -- twin or full.

 8  Q    And both you and your father were laying on this air mattress?

 9  A    Yes.

10  Q    And are we talking about an air mattress that you would take

11       like camping or something different?

12  A    A air mattress that you would take camping.

13  Q    Okay, does it -- so, a very thin one?

14  A    Yes.

15  Q    So, when you're laying on this air mattress, you didn't fall

16       off it?

17  A    No.

18  Q    Now, had you been to -- to your father's computer store before

19       that event?

20  A    Yes.

21  Q    How -- approximately how many times?

22  A    I don't know.  I don't remember.

23  Q    Can you tell us approximately how many times you visited with

24       your father during your eighth grade year?

25  A    Whenever I was asked.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 17 of 301*

```
 1   Q   Would you characterize the relationship between your mother

 2       and father as good?

 3   A   No.

 4   Q   Would you characterize your relationship with your father as

 5       good at that time?

 6   A   No.

 7   Q   Would you characterize your mother and your relationship as

 8       good during that time?

 9   A   Yeah.

10   Q   Now, you indicated that you had at least -- you talked to a

11       police officer about this, right?

12   A   Yes.

13   Q   You also talked to a protective services worker, correct?

14   A   I've talked about it many times to many prosecutors.

15   Q   You've talked to prosecutors about this?

16   A   Yes.

17   Q   Approximately how many times?

18   A   Two or three maybe.

19   Q   Two to three times with prosecutors?

20   A   Every time you guys have waived it.

21   Q   So, you talked today with the prosecutor?

22   A   Not about this.

23   Q   But two to three other times before this?

24              MISS JOHNSON:  Objection.  Relevance.

25              THE COURT:  Overruled.  Go ahead.
```

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 18 of 301

```
 1   BY MISS BAKER:

 2   Q    You've talked to them two or three other times as well?

 3   A    Yes.  Not the same one.

 4   Q    Before you talked to the prosecutors, you also talked to DHS

 5        workers or protective services workers, correct?

 6   A    Maybe once or twice.

 7   Q    And during that -- during your interview with them, you

 8        indicated that you had lied about sexual activity in your

 9        past, correct?

10   A    No.

11   Q    You didn't?

12   A    No.

13   Q    Well, let me just ask you this, Miss Ward.  Do you remember

14        talking to Kim Watson?

15   A    Yes.

16   Q    When you met with Kim Watson, you were at the Child Abuse

17        Council, correct?

18   A    Yes.

19   Q    And did you tell her that you had done sexual things in the

20        past and had lied about it?

21        MISS JOHNSON:  I'd object to improper impeachment.

22   The defense does not have the witness here to impeach the

23   victim if she testifies inconsistently.

24        MISS BAKER:  I don't think that's improper impeach-

25   ment.  I can ask her about her prior inconsistent statement.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

```
 1                    THE COURT:  I think you can too.  Overruled.

 2                    THE WITNESS:  Can you repeat the question?

 3                    MISS BAKER:  Sure.

 4    BY MISS BAKER:

 5    Q    Did you tell Kim Watson that you had done sexual things in the

 6         past and had lied about it?

 7    A    No.

 8    Q    Is it true that you'd been having problems with lying with

 9         your family --

10    A    Small things.

11    Q    -- during that same time frame?

12    A    Yes.

13    Q    And isn't it true that when you -- just before you reported

14         this, you had been get -- you had gotten in trouble with your

15         mom?

16    A    This was the reason I did get in trouble.

17    Q    And isn't it true back in 2012 there had been a meeting

18         involving your mom, your stepdad, your stepmom, and your dad

19         about how you were lying about things?

20    A    What year?

21    Q    In 2012.

22    A    Possibly.  I don't remember.

23    Q    And did you, on the night that you say this happened, sleep at

24         that location?

25    A    No.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

*Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 20 of 301*

1   Q   Where did you end up sleeping?

2   A   After what happened happened, he told me to get up.

3   Q   Where did you end up sleeping?

4   A   I'm answering your question. I ended up sleeping at Sarah's

5       mom's.

6   Q   How did you get there?

7   A   Like I was saying, after what happened happened, he told me to

8       get dressed and brought me there.

9   Q   Okay, did you tell Sarah's mom?

10  A   No.

11  Q   Was he there when you were sleeping there?

12  A   He dropped me off.

13  Q   He dropped you off. Okay, so, you were there with Sarah's mom

14      and --

15  A   The girls.

16  Q   -- Stormy and Zoe?

17  A   Yes.

18  Q   And how old are they?

19  A   Now or then?

20  Q   Then.

21  A   Zoe was probably three or four. Zoe -- or Stormy maybe one --

22      two.

23  Q   All right, was Sarah there as well?

24  A   No. She was at work.

25  Q   But Sarah's mom was there?

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 21 of 301

```
 1   A    Yes.

 2   Q    And did you have an opportunity to talk to Sarah's mom?

 3   A    As soon as I got there, I went to bed.

 4   Q    You didn't say anything to Sarah's mom?

 5   A    I said, "Hi" and "Good night."

 6   Q    And did you tell her in the morning?

 7   A    No.

 8   Q    Would you -- well, you had a good relationship with her,

 9        didn't you?

10   A    I suppose decent.

11   Q    Did you tell your mom the next day?

12   A    No.

13   Q    Why not?

14   A    I was scared.  I still didn't believe it myself.

15   Q    Now, you indicated that you were told not to tell anybody

16        because you know what would happen.  Did he threaten you

17        physically?

18   A    No.

19   Q    Did he threaten to hurt you?

20   A    No.

21   Q    Was the home where Sarah's mom lived the same place where

22        Sarah lived?

23   A    On occasion.  They were back and forth staying in the trailer

24        to with her mom which is why there was a air mattress at the

25        shop.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 22 of 301

```
 1   Q    So, you don't remember if Sarah was living at her mom's house
 2        or at the trailer?
 3   A    Correct.
 4   Q    This location in the computer shop, was it daytime -- when you
 5        were at the computer shop, was it daytime or nighttime?
 6   A    Nighttime.
 7   Q    Was it dark out or light out?
 8   A    Dark.
 9   Q    And tell me, are there windows in this computer shop?
10   A    In the very front.
11   Q    And those windows face a big parking lot, correct?
12   A    Yes.
13   Q    They don't have any blinds on them, do they?
14   A    No.
15   Q    And were the lights on inside the computer shop?
16   A    No.
17   Q    You didn't turn the lights on to clean the shop?
18   A    Yes.  We turned them on to clean the shop.  They were turned
19        off --
20   Q    Okay.
21   A    -- once what happened took place.
22   Q    And it -- it's -- in this office area, there's no door,
23        correct?
24   A    On one half.
25   Q    I don't understand that question.  Is there a door or not?
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

```
 1  A   There's two back rooms.  It depends which one you're talking
 2      about.
 3  Q   Well, the room with the air mattress, did it have a door?
 4  A   No.
 5  Q   So, anyone in the computer shop would have been able to see
 6      into that room, correct?
 7  A   No.  It was in a L-shaped.
 8          MISS BAKER:  All right, thank you.  I have nothing
 9      further at this time.
10          THE COURT:  Anything else?
11          MISS JOHNSON:  No, Your Honor.
12          THE COURT:  I have no questions.  You may stand
13      down.
14          (At 9:53 a.m., witness excused)
15          MISS JOHNSON:  For the purposes of preliminary
16      examination, the People rest.
17          THE COURT:  Miss Baker, do you wish to call any
18      witnesses?
19          MISS BAKER:  No, I do not for purposes of
20      preliminary exam, Your Honor.
21          THE COURT:  All right.
22          MISS JOHNSON:  I move for bind over on the Amended
23      Information, Your Honor.
24          THE COURT:  Miss -- Miss Baker, any response?
25          MISS BAKER:  I oppose.
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 24 of 301

1    THE COURT:  All right.  The testimony indicates that

2    between 2011 and 2012 when Miss Ward was 14 or 15 years old,

3    but between the ages of 13 and 16, that --

4    MISS JOHNSON:  I'm sorry, Your Honor, the testi-

5    mony was in eighth grade she was 13 to 14 years old during

6    eighth grade.  And not that it matters for the Information but

7    just --

8    THE COURT:  Doesn't matter.

9    MISS JOHNSON:  -- to set the record straight.

10   THE COURT:  All right, the -- well, let's see here.

11   Yeah, she wouldn't have been 15.  Her birthday's January 6,

12   1998, so she would have been 13 or 14.  You're right.  Anyway,

13   it doesn't make any difference -- 13 to 16 years old.

14   At 4759 Airline Road, that, in fact, the Defendant

15   who is her natural father had sexual intercourse -- penetra-

16   tion with her penis/vagina which is what the Amended Informa-

17   tion alleges.  Therefore, the case will be bound over to

18   circuit court on the Amended Information, Criminal Sexual

19   Conduct in the First Degree.

20   There was a Motion with regard to bond.  Go ahead.

21   MISS BAKER:  Thank you, Your Honor.  Your Honor,

22   Mr. Rainbolt has -- has been incarcerated on this hundred

23   thousand dollar cash/surety bond since he turned himself in

24   on May 9th of 2014.  He has protested his innocence.  As you

25   can see, he's gone -- been prepared to go to trial.  His --

LORI KING, CER 6092
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 25 of 301

1    he cooperated with the investigation and knew about the

2    investigation and did not flee the area.  And I -- and, as I

3    indicated, he turned himself in.  He has his mother who is

4    present in the courtroom as well who is prepared to be a

5    family surety.  He has family ties through this community.  As

6    the Court can see, he has other children here; and he was

7    actually running a business at the time of his arrest and he

8    had plans I -- I think to expand that business which have

9    basically been extinguished at this point in time.  However,

10   he is capable of working in the community.

11          As you can see, there are some issues in this case

12   and, with respect to the victim, he is not a -- he is not a

13   threat to her because he did not interfere with this investi-

14   gation, Your Honor.  He has some criminal history as the Court

15   can see, but his last con- -- his felony convictions are from

16   1999.  He had a Retail Fraud Third in 2002 and, other than

17   that, he's only had traffic tickets.  I think, under the

18   circumstances, that his -- this justifies a reduction in bond;

19   and we would ask that the Court reduce his bond and allow him

20   to be a productive member in society before his trial.

21          THE COURT:  Miss Johnson?

22          MISS JOHNSON:  Your Honor, procedurally, I want the

23   Court to be aware that this Court heard the Motion to Reduce

24   Bond at the original preliminary examination in February and

25   denied the Motion at that time.  Procedurally, what has

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 26 of 301

1    happened since then is at -- at that preliminary examination,

2    at a pre-trial conference in circuit court, and at a Cobbs

3    Hearing -- which I will say were all with a different defense

4    attorney -- at each of those hearings, it was discussed with

5    his counsel that if a resolution couldn't be reached in this

6    case as it was charged as a CSC Third, that we would be

7    amending the Information for the CSC First.  When it became

8    clear that there was not a resolution in this case, we filed

9    our Geoke Motion to do so.  That trial had been set for

10   June 3rd.  At the time the People were prepared to proceed

11   with trial.  It became remanded at the Defendant's request.

12   We have met our burden here today.  It's -- the -- really the

13   only thing that has changed is the trial has been delayed at

14   the Defendant's request, and I don't believe his request for a

15   delay to get this remanded is good cause for the bond to be

16   reduced, and so I'd ask the Court to deny that Motion.  He is

17   a danger to society and, specifically, to his daughter and

18   possibly to his other two daughters.

19           THE COURT:  Any response?

20           MISS BAKER:  Well, Your Honor, I can tell you that I

21   was appointed -- or our office was appointed on May 12th, so

22   we were appointed approximately two weeks before the trial.  I

23   did not have at that time all of the information.  In fact,

24   when I -- when I first met with the prosecutor about this

25   case, they handed me evidence which hadn't been provided

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 27 of 301

1    previously to the previous defense counsel.  So, you know, two

2    weeks or two to three weeks before the trial date, they are

3    providing me evidence and then telling me that they are

4    Geokeing a First Degree Criminal Sexual Conduct.  That's

5    procedural but, under the circumstances, Your Honor, as you

6    can see from this case, that there are some issues with this

7    particular victim.  There is not necessarily a high likelihood

8    of conviction in this matter.  What we have here is a man who

9    is protesting his innocence and, because he's not knuckling

10   down to the plea or to plea, they're Geokeing or adding a

11   higher charge which is within their discretion.  That's fine.

12   It's happening routinely up in circuit court, but it's fine if

13   you -- if they want to do that; but to then punish him for

14   trying to exercise his constitutional right is a bit unfair.

15   He is not a threat to his child.  I don't think they can

16   establish any contact between him since 2012 and his daughter

17   that was nonconsensual.  If they don't want him around her,

18   great.  He doesn't want to be around her given the circum-

19   stances of this offense.  If the Court wants to limit who he

20   has contact with, the Court can do that as a condition of his

21   bond.  But I think, under the circumstances, a bond reduction

22   is appropriate; so we would ask you to consider our Motion.

23           THE COURT:  All right, I'm going to change the bond.

24   The bond is going to be two hundred thousand.  It's going to

25   be 10 percent.  I'm not going to obviously give a family

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 28 of 301

```
 1        surety bond or whatever.  The condition of your bond obviously

 2        is you're not to have any contact with the alleged victim in

 3        this case in any way, shape, or form.  Do you understand?

 4                  THE DEFENDANT:  (Defendant nodded head)

 5                  THE COURT:  Speak.

 6                  THE DEFENDANT:  Yes.

 7                  THE COURT:  The -- okay, so --

 8                  MISS BAKER:  So, it's a 10 percent?

 9                  THE COURT:  Of two hundred thousand.

10                  MISS BAKER:  Two hundred thousand?

11                  THE COURT:  Which is twenty thousand.

12                  MISS BAKER:  Thank you, Your Honor.

13                  THE COURT:  Thank you.

14                  (At 10:02 a.m., proceeding concluded)

15

16

17

18

19

20

21

22

23

24

25
```

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN

Certified Document - File Locator: MUS-J68GIY-A0C8FB2E - Monday, May 07, 2018 3:51 PM Eastern Daylight Time - Page 29 of 301

1   STATE OF MICHIGAN    )
                         )
2   COUNTY OF MUSKEGON   )

3

4          I certify that this transcript, consisting of 29 pages,

5   is a complete, true and correct transcript of the proceedings and

6   testimony taken in this case on July 2, 2014.

7

8   Date:   August 12, 2014

                                    Lori King, CER 6092
9                                   Certified Electronic Recorder
                                    990 Terrace Street, Second Floor
10                                  Muskegon, MI 49442
                                    (231) 724-6330
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**LORI KING, CER 6092**
OFFICIAL COURT RECORDER - 60TH DISTRICT COURT
MUSKEGON, MICHIGAN