325600

STATE OF MICHIGAN

IN THE 14TH CIRCUIT COURT
FOR THE COUNTY OF MUSKEGON

* * *

PEOPLE OF THE STATE
OF MICHIGAN,

       Plaintiff                  File #14-64458-FC

   V

DEREK JAMES RAINBOLT,

       Defendant.
------------------------------------------------\

MOTION TO SUPPRESS

BEFORE THE HONORABLE WILLIAM C. MARIETTI,

Muskegon, Michigan, on Wednesday, September 29, 2014.

APPEARANCES:

For the Plaintiff:  Christina E. Johnson

For the Defendant:  Paula Baker

CALENDARED

2015 FEB 13 P 2:52
NANCY A. WATERS
MUSKEGON COUNTY CLERK
FILED

Transcribed by:  MILLS COURT REPORTING
                  1615 Sunset
                  N Muskegon, MI 49445
                  231-744-6823
                  BOBBIE SPRINGER, CER-3408

RECEIVED
SEP 16 2015
COURT OF APPEALS
THIRD DISTRICT

---

Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823

```
                                                (Videotape, 09-29-14; 3:58:13)
 1                              INDEX
 2
 3
 4  WITNESSES:      PEOPLE                                      PAGE
 5
 6      None.
 7
 8  WITNESSES:      DEFENDANT
 9
10      None.
11
12  EXHIBITS:                                    identified   received
13
14      None.
15
```

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

2

*Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 24 of 50*

(Videotape, 09-29-14; 3:58:13)

THE COURT: This is People versus Rainbolt, file number 14-64458. The Court has before it a motion to suppress a statement given by the Defendant with regard to an encounter he had with the alleged victim in this case. I believe it was four years prior to the alleged conduct that gave rise to the Information in this case. The contention of the defense, as I understand it, is it's irrelevant and the Plaintiff has responded with a 404(B) notice and a response that it is, indeed, relevant and not outweighed by any prejudice, so Ms. Baker, it's your motion. If you'd like to comment, you may.

MS. BAKER: Yes, your Honor, I would just note that we received the notice regarding the 404(B) in 768.27 on Friday. I didn't reali -- at least I think that's what the proof of service indicates. I object to the inclusion of the polygraph as an exhibit to these particular motions or the notices that was filed by the People. I think that is not admissible under any circumstance, not even as some attachment to a notice that does not complain -- contain any statement by my client outside of the polygraph results, and the polygraph results in this particular case could have been removed from the documents that were submitted and I think that it was selectively added in, and I would move that it be stricken from the Court documents as well.

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

3

*Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 25 of 50*

(Videotape, 09-29-14; 3:58:13)

1  Additionally, I would note that most of the
2  issues are addressed in our brief, even though there was
3  no notice regarding the 404(B) or 768.27, and I think that
4  we anticipated there might be something like that filed in
5  our analysis.  Mr. Oatmen from our office did write that
6  brief, and I think he points out quite well the status of
7  the law in this way and especially the application of
8  *Watkins* to this type of evidence.  I would, again, also
9  point out that description of an act involving the same
10 victim and my client involves an accidental or an
11 incidental touching by the victim of him after he had been
12 woken up and I think any reference to the erection
13 disregards the idea that an erection is a largely
14 involuntary response under the circumstances, does not
15 show that he had a sexual interest in the complainant.
16 Furthermore, it's more similar in the description that the
17 People's Exhibit A attached to their brief, *People v*
18 *Novak,* where the court found that there was insufficient
19 similarity between the 404(B) acts and the charged act
20 because the charged act involved penetration and the
21 404(B) acts involved no penetration or any attempt at
22 penetration.  So I think that that could be pers -- as
23 persuasive eviden -- or persuasive authority to further
24 preclude this particular statement by my client regarding
25 this interaction with his daughter.

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

4

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 26 of 50

(Videotape, 09-29-14; 3:58:13)

1    THE COURT: Which case was that that you just --
2    MS. BAKER: That's *People v Novak* that the People
3    supplied with their brief.
4    THE COURT: Oh, okay, yeah. The *Novak*, the one
5    that was attached to the --
6    MS. BAKER: Correct. Now they do say that the
7    sex manual could come in because it showed that that
8    defendant had an interest in sex with minors, but it did
9    further say that the acts involving his granddaughters
10   that they were proposing -- or that they did introduce at
11   trial did not involve sexual penetration so it was
12   dissimilar to the acts that were involved in the case
13   charged. So I think that we have a very similar fact
14   pattern with respect to that.
15   Again, I -- the offer is that evidence is to
16   show intent. I don't think that you can take an
17   accidental touching and change it -- an accidental or an
18   incidental touching by the victim of my client and show
19   that it's his intent to have sex or sexual intercourse
20   with this victim, so I think that that's a -- that is not
21   proper purpose. Furthermore, there's no scheme, plan, or
22   system in doing this act in that this is something that
23   occurred approximately four years before this incident,
24   three or four years before the incident that's alleged in
25   the Complaint because she testified at the prelim that

*Mills Court Reporting,   1615 Sunset, N Muskegon, MI 49445   231-744-6823*

5

(Videotape, 09-29-14; 3:58:13)

1  that happened in 2002. His statement was that about four
2  years before 2013 this incident with the victim occurred.
3  So I think that the -- there's no common scheme, plan, or
4  system shown here. Additionally it's not penetration from
5  the 2009 incident. Furthermore, I don't think it shows
6  motive or opportunity. Motive is an -- is the
7  inducement --
8           THE COURT: Well, that's what they're claiming.
9           MS. BAKER: Right.
10          THE COURT: That's -- I think that's the big --
11  big thrust of the -- I don't want to steal your thunder.
12  The People's position is this is evidence of motive, that
13  he was somehow -- he was sexually attracted to his
14  daughter and, therefore, when he got the opportunity to
15  fulfill his sexual attraction he took it; right?
16          MS. JOHNSON: Yes.
17          THE COURT: Go ahead.
18          MS. BAKER: Well, your Honor, I don't think that
19  this particular act shows that and I think that it's -- I
20  mean the motive is an inducement to -- or for doing some
21  act as the case law has established. I think that it's
22  quite a leap to go from a 2009 accidental and incidental
23  contact to say that three or four years later he did this
24  when there's not a proximal, temporal relationship between
25  these two acts. It's not like he only had contact with

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445   231-744-6823*

6

*Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 28 of 50*

(Videotape, 09-29-14; 3:58:13)

1  her during those two incidents so that the next time he
2  had ti -- he had an opportunity he did it?  It just is
3  beyond quite belief, your Honor, to say that he waited for
4  three or four years to act on that particular, I guess,
5  emotion.  I don't know I can state exactly what that --
6  what that would be.  And I would also point out that there
7  is no other evidence of this act other than his statement
8  regarding it.  There's no other witnesses.  Not even the
9  victim indicates that this occurred.  So I think
10  there's --
11         THE COURT: You mean that -- wait a minute.  When
12  you say not the victim, you mean she denies that occurred?
13  I didn't --
14         MS. BAKER: She was asked if there was any other
15  sexual contact with him and she said no.  I would also --
16  I think that there's some differences of opinion about the
17  specific language that is used during Mr. --
18         THE COURT: Was this at the prelim?
19         MS. BAKER: Her testimony.
20         THE COURT: Was this at the prelim where she said
21  there was no other sexual contact?
22         MS. BAKER: No, I believe that was at the -- when
23  she was interviewed by Child Protective Services.
24         THE COURT: Oh, okay.  Go ahead.
25         MS. BAKER: Okay.  I think there's an indication

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445   231-744-6823*

7

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 29 of 50

(Videotape, 09-29-14; 3:58:13)

1     in the People's brief that the victim said that she
2     straddled him and that he indicated that during his
3     statement, but I made my notes, this was a recorded
4     interview of my client.  I reviewed that particular
5     recording and never wrote down straddled, and I'm -- if
6     there's a word that sticks out in my mind I will write it
7     down.  And that -- he did not say that she straddled him
8     at any point, so I think it's a difference of opinion
9     about the language that was being using, and there I'm not
10    saying that they're trying to mislead, but I want to say
11    that the language that he used was she jumped on him and
12    as soon as the beh -- you know, as soon as these things
13    happened he tried to get away from it, so it's not like he
14    was trying to engage with this young girl at that time
15    when -- in 2009.  He was trying to get away and she
16    grabbed at his pants and she may have touched his penis
17    when he was trying to get away.  He's not saying that he
18    was engaging with her in this behavior.  So I just want to
19    point out that that's also a distinction.
20          But I think that in the brief Mr. Oatmen points
21    out all of the factors that *Watkins* indicates is
22    important.  Furthermore, *Watkins* does say that the prior
23    act here is not admissible under 768.27(A), so the
24    propensity inference weighs against admissibility as
25    indicated in *Watkins*.  It's on page 6 of our brief.  So I

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

8

(Videotape, 09-29-14; 3:58:13)

1  think that all of the *Watkins* favor weigh heavily against
2  admissibility under these circumstances, and I think that
3  it -- there's some inference being presented by the People
4  that the 402 and 403 don't apply when you're trying to
5  admit evidence under 768.27 and I think that that is a
6  mischaracterization.  We would have heard news if MR -- if
7  Michigan Rules of Evidence 403 does not apply to evidence
8  admitted under 768.27.  It still has to go through the
9  relevancy test and, furthermore, it can't be more
10 prejudicial than probative.  Based on the nature of the
11 statement, I think that the potential for the jury to
12 convict my client just based on that statement, even
13 though this victim has a history of lying and has a number
14 of credibility issues, I think that that prejudicial --
15          MS. JOHNSON: I object to that.  That's not
16 evidence before the Court in this hearing, the victim's
17 credibility.
18          THE COURT: What's that?  What did you say that I
19 didn't --
20          MS. BAKER: I said this victim has some issues
21 with her credibility, your Honor.
22          THE COURT: Oh, okay.  Well, I agree.
23          MS. BAKER: But I think that there is a high
24 chance --
25          THE COURT: Wait a minute.  I want to make sure

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

9

*Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 31 of 50*

(Videotape, 09-29-14; 3:58:13)

1  the record's clear.  I don't agree that she has issues
2  with credibility.  I agree with your objection.  Okay, go
3  ahead.
4         MS. BAKER: That there -- with the admission of
5  the statement the prejudicial value -- or prejudicial
6  nature of it is so high that it would eliminate the Court
7  -- or the jury from considering the facts as presented to
8  them during the trial, so I'd ask that the Court exclude
9  that statement from being presented to them.
10        THE COURT: All right.  Well, as I always have to
11 go through in the 404(B) issue, whenever you contend that
12 it's not relevant to any issue in the case, what is the
13 defense, just a general denial, it didn't happen?
14        MS. BAKER: Yes.  He denies that it happened,
15 your Honor.
16        THE COURT: Okay.  So it's a general denial.  All
17 right.  Go ahead, Ms. Johnson.
18        MS. JOHNSON: Your Honor, we did file a 404(B)
19 and 768 notice.  However, that's not the crux of my
20 argument before the Court today.
21        THE COURT: I understand.
22        MS. JOHNSON: This is admissible as a statement
23 by a party opponent and as relevant evidence.  The only
24 way that relevant evidence is ever curbed by the statute
25 is under 403 when it's more probati -- when this probative

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

10

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 32 of 50

(Videotape, 09-29-14; 3:58:13)

1  value is substantially outweighed by the potential
2  prejudice.  This is clearly relevant.  It's relevant to
3  his motive.  This is by the Defendant's own statement to
4  the police he sees it as very similar to the act that has
5  been charged against him.  We're talking about -- and I do
6  want to correct the timeline that we've been talking
7  about.  The polygraph and this statement was taken in
8  November of 2013, which would mean that this act that the
9  Defendant talks about was sometime between -- around
10  November 2009 and the crime that we're alleging in the
11  2011-2012 school years, so it could have been less than
12  two years between the time the Defendant --
13          THE COURT:  So it was somewhere between two and
14  three years?
15          MS. JOHNSON:  Two and three, yes.
16          THE COURT:  Yeah.  Okay.  Do you agree with that,
17  Ms. Baker?
18          MS. BAKER:  In a general sense.  I would say it's
19  more like three years.
20          THE COURT:  Okay.  Well, between two and three.
21  Okay.  I'm gonna -- all right, go ahead.
22          MS. JOHNSON:  It goes -- it's relevant because it
23  goes directly to his motive and state of mind.  Motive is
24  defined as case law by an inducement for doing some act,
25  something that gives birth to the purpose, and what we

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

11

(Videotape, 09-29-14; 3:58:13)

have here is a statement that his daughter was on him, bouncing up and down on him, rubbing her genitalia on him, her breasts became exposed and he got an erection, sexual arousal. Now it may not have been the very next time he saw her, but when he has his opportunity and had her alone in his shop he acted on that. Not only the same victim but that exact same sexual position is what he did, and in the *Watson* case this court does allow in a picture of a girl's behind that was the victim of a sex -- of a CSC case and they specifically held that it was not coming in to show that the defendant was a sexual pervert but his exact sexual interest in that victim.

We have more than that here because we have not just his sexual interest in our victim in this case, but also his sexual interest in that exact sexual act in that exact sexual position with her. The crime that the victim has described in the preliminary exam and in the police reports and that we intend to prove at trial is that the Defendant pulled her down on top of him and penetrated her from below, the same sexual position as he experienced when she was bouncing on him and aroused him previously.

The defense in their motion, and I haven't heard anything different today, indicate that the only -- that the potential prejudice is a double inference of a propensity, that he acted badly once and so he must have

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445 231-744-6823*

12

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 34 of 50

(Videotape, 09-29-14; 3:58:13)

1  done this again. I don't think any prosecutor could stand
2  up with a straight face and tell the jury he acted badly
3  once based on his statement alone. His statement is that
4  he became aroused and he pushed this girl off of him to
5  avoid that sexual contact, to avoid anything.
6      MS. BAKER: Your Honor, I have to object at this
7  point. I recognize this is her argument, but when I
8  listened to the recorded interview, Mr. Rainbolt does not
9  indicate that he became aroused during this incident.
10     MS. JOHNSON: I'm sorry. He had an erection
11 while she was bouncing on him.
12     MS. BAKER: He also indicated he had just woken
13 up.
14     MS. JOHNSON: Whether the arousal comes from his
15 sleep or from the victim I would say is a question for the
16 jury. But we can't introduce that as propensity evidence,
17 and I think it's a giant leap to say that a jury would
18 think it's propensity evidence. When the jury hears that,
19 they're going to hear only his version of the events
20 because that is the only version we have. The victim was
21 asked if there was anything sexual before. She had no way
22 of knowing that he saw that sexually. If she didn't know
23 he had an erection, she only knows of that experience that
24 she was trying to get him out of bed, she was bouncing
25 around, and he pushed her off and told her to stop.

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

13

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 35 of 50

(Videotape, 09-29-14; 3:58:13)

1 That's not something that she necessarily knew about and
2 so it's not surprising that it didn't come out when she
3 was asked about prior sexual contact with him.
4 	Again, it is relevant. The only way that
5 relevant evidence is kept out is for its potential
6 prejudicial value to substantially outweigh it, and there
7 is just no substantial danger of an unfair prejudice in
8 this case because the Defendant did exactly what he should
9 have done in pushing her off of him, and this goes
10 specifically to his motive, not to any propensity.
11 	THE COURT: Okay. Anything further you want to
12 say, Ms. Baker?
13 	MS. BAKER: Well, I just need to make a quick
14 statement. If he did the right thing back in 2009, then
15 he shouldn't -- it shouldn't be used in this particular
16 case to show that he did this particular offense. If
17 that's their theory, that he did the right thing back in
18 2009, then that is not relevant to his motive or intent in
19 this particular case because he did the right thing back
20 then.
21 	THE COURT: Okay, thank you, ladies. I will
22 consider this matter and give you a written opinion.
23 	MS. JOHNSON: Your Honor, while we're here, there
24 is a motion to add witnesses that was filed on May 28th
25 that was never heard by the Court. I did -- in the span

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445  231-744-6823*

14

*Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 36 of 50*

(Videotape, 09-29-14; 3:58:13)

1  of time where this has been adjourned I did have time to
2  do a memo to add witnesses; however, I failed to add all
3  of the witnesses, so I'm renewing my motion to add
4  Jennifer Houston and Timothy Houston as witnesses that was
5  filed on May 28th.
6      THE COURT: Okay.  We're set for trial October --
7      MS. JOHNSON: A week from tomorrow.
8      THE COURT: A week from tomorrow, okay.  Anything
9  you want to say about those witnesses, Ms. Baker?
10     MS. BAKER: Well, my notice shows Jennifer and
11 Timothy Houston on the August 1st, 2014 witness list.
12     MS. JOHNSON: Okay.
13     MS. BAKER: So I -- I'd --
14     THE COURT: So the motion is not necessary?
15     MS. JOHNSON: It's withdrawn then.
16     THE COURT: Okay.  Okay, thank you, ladies.
17        (Court adjourned at 4:17:28.)
18                    -oOo-

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445   231-744-6823*

15

(Videotape, 09-29-14; 3:58:13)

STATE OF MICHIGAN    )
                     )   SS
COUNTY OF MUSKEGON   )


I, certify that this transcript, consisting of 16 pages is a complete, true, and correct transcript of the videotaped proceedings and testimony taken in PEOPLE V RAINBOLT, 14-64458-FC on September 29, 2014, Videotaped.

*\*\*Please note proper names and/or case names unknown to this reporter are spelled phonetically and may not be correct.*

*Bobbie Springer*

Bobbie Springer

Certified Court Recorder 3408

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445   231-744-6823*

16