325600

STATE OF MICHIGAN

IN THE 14TH CIRCUIT COURT
FOR THE COUNTY OF MUSKEGON

\* \* \*

PEOPLE OF THE STATE
OF MICHIGAN,

   Plaintiff     File #14-64458-FC


  V


DEREK JAMES RAINBOLT,     ORIGINAL

   Defendant.
-----------------------------------------------\

MOTION IN LIMINE

BEFORE THE HONORABLE WILLIAM C. MARIETTI,

Muskegon, Michigan, on Friday, October 3, 2014.

APPEARANCES:

For the Plaintiff:  Christina E. Johnson

For the Defendant:  Paula Baker

**CALENDARED**

2015 FEB 13 P 2: 52
NANCY A. WATERS
MUSKEGON COUNTY CLERK
FILED

Transcribed by:  MILLS COURT REPORTING
       1615 Sunset
       N Muskegon, MI 49445
       231-744-6823
       BOBBIE SPRINGER, CER-3408

RECEIVED
SEP 16 2015
COURT OF APPEALS
THIRD DISTRICT

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 2 of 50

(Videotape, 10-03-14; 3:08:47)

1                          INDEX

2

3

4  WITNESSES:        PEOPLE                    PAGE

5

6        None.

7

8  WITNESSES:        DEFENDANT

9

10       None.

11

12 EXHIBITS:                       identified    received

13

14       None.

15

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

2

(Videotape, 10-03-14; 3:08:47)

1          THE COURT: Okay, we're back again on People

2     versus Rainbolt.  You have a motion now, Ms. Johnson?

3          MS. JOHNSON: Yes, your Honor.  I don't typically

4     file motions in limine like this as the Court knows;

5     however, I felt in this case it was necessary to file a

6     motion in limine to enforce a few points of law prior to

7     trial based on some conversations I've had with Counsel.

8     The first being the rape shield law.  Specifically there

9     are a couple of incidences that I want to make sure the

10    jury -- stay out of hearing of the jury based on the rape

11    shield law.  The first is that at one point our victim was

12    caught with her pants down with her step-sister.  This was

13    reported to CPS and it was unsubstantiated.  Two points on

14    that. I think the behavior is covered by the rape shield

15    and I think the lack of substantiation by the CPS is

16    hearsay that does not have an exception.

17         The second instant would be the same victim was

18    caught kissing with her same step-sister.  My

19    understanding is both went to counseling and it was ruled

20    just a case of sexual curiosity.  Again, I think it's

21    protected by the rape shield law and any outcome of that

22    is protected as hearsay without an exception.

23         And finally I also believe there may be some

24    allegations of our victim looking at pornographic

25    material, which again is protected by the rape shield.

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

3

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 4 of 50

(Videotape, 10-03-14; 3:08:47)

1    THE COURT: Okay.  Ms. Baker, anything you want
2  to say?
3    MS. BAKER: Well, I think that the three
4  instances that are being brought to the Court's attention
5  do not fall within the rape shield statute in that not one
6  of them involves the sexual conduct of the victim in this
7  case.  I don't think you can say that being found with her
8  pants down is sexual conduct.
9    THE COURT: Well, then why is it relevant?
10    MS. BAKER: Well, the thing that's relevant to is
11  that she indicated she set -- she made a disclosure that
12  she was going to show her step-sister or cousin a game
13  that her dad had taught her and it was determined to be
14  unfounded and unsubstantiated after an investigation.
15  That's the relevance of that particular incident.
16    THE COURT: Wait a minute.  What is the -- so
17  what exactly would you propose to show or what evidence --
18  what precise evidence you talking about presenting then?
19    MS. BAKER: What's the basis for presenting that?
20    THE COURT: No.  What I guess I need to know, the
21  -- you're gonna tell the -- you're gonna cross-examine the
22  victim, I take it.
23    MS. BAKER: Yes.
24    THE COURT: And say isn't it a fact that you were
25  caught with your pants down or something, is that -- is

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

4

(Videotape, 10-03-14; 3:08:47)

1  that it?

2          MS. BAKER: I think that that would be the

3  question, yes.

4          THE COURT: Okay.  And you're objecting to that.

5  Now why does the answer either -- let's say she says yes,

6  I was caught with my pants down.  What is that relevant

7  to?

8          MS. BAKER: Well, your Honor, it goes back to

9  establishing this victim has sexual knowledge that

10  predates this allegation.

11          THE COURT: How does having her pants down show

12  she has sexual knowledge?  I mean, she pulls her pants

13  down every time she goes to the bathroom.

14          MS. BAKER: I understand, but it was investigated

15  as a sexual abuse investigation, your Honor, based on the

16  statements that were made.  I don't have the -- I'm basing

17  this on information and belief because it's very briefly

18  addressed in this report that was provided to me.  I asked

19  for a subsequent report, it has not been provided to me,

20  and that I think when I requested it it prompted this

21  motion.

22          THE COURT: Well, I don't -- based on the fact

23  that she had her pants down doesn't seem to me to be

24  relevant to anything here, so regardless of whether the

25  rape shield statute applies, I don't find it relevant, so

_Mills Court Reporting,   1615 Sunset, N Muskegon, MI 49445   231-744-6823_

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 6 of 50

(Videotape, 10-03-14; 3:08:47)

1  I'm not gonna admit it on that basis.  Now the other

2  matter was what?  Kissing her sister or something?

3          MS. JOHNSON: She's caught kissing with her

4  sister, her step-sister.

5          MS. BAKER: Her step-sister.

6          MS. JOHNSON: They both went into counseling for

7  that and it was ruled just simple childhood curiosity by

8  the counselors is the information that we got in the

9  reports.

10         THE COURT: Okay.  And so you want to bring that

11  out to show, Ms. Baker?

12         MS. BAKER: Again that there's sexual knowledge

13  that existed before this particular incident, alleged

14  incident.

15         THE COURT: Well, these were -- how old were

16  these kids?

17         MS. JOHNSON: I don't believe the reports are

18  even clear as to how old they were at the time.

19         MS. BAKER: It was a couple -- I want to say it

20  was before 2011 according to the report.

21         THE COURT: Okay.  So how old would --

22         MS. BAKER: She would have been like, I think,

23  11, 12, 13, that age range.

24         MS. JOHNSON: The 2011-2012 school year she was

25  13 to 14.  So January 2011 she turned 13.

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

6

(Videotape, 10-03-14; 3:08:47)

1  THE COURT: All right. So she would have been 12
2  or 13 you're saying. Now this shows -- I mean, this shows
3  her knowledge of sexual activity. I mean, was there --
4  again, you know, I'm at a bit of a disadvantage here. I
5  don't know what is alleged specifically other than
6  penetration was alleged that the Defendant involved
7  himself with the victim. Can you tell me that? Maybe --
8  I don't know is all I'm saying. I mean, was kissing
9  involved?

10  MS. JOHNSON: No, kissing was not involved in
11  this incident. It was he had her take her pants off, he
12  took his pants off, and he asked her to get on top of him
13  and he penetrated her from below, and she does not
14  disclose any kissing.

15  THE COURT: I find it irrelevant. What's the
16  next thing?

17  MS. JOHNSON: The victim viewing pornographic
18  material.

19  THE COURT: Okay. Now you're gonna -- that was
20  how -- this was recently to the event that occurred or --

21  MS. JOHNSON: Judge, this comes -- the only
22  reference I can find from this is in the Defendant's
23  statements so -- and there is not any timeline that I
24  could see in that, so I brought it up kind of
25  precautionarily because I don't think it's relevant to the

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445 231-744-6823*

7

(Videotape, 10-03-14; 3:08:47)

1    jury and I don't think -- or I think it is protected by

2    the rape shield, but I don't know the details of what

3    would be disclosed, so I'd ask for a proffer of what would

4    be testified to in that regard.

5         THE COURT: Well, I guess I am going to have know

6    what you have on that, Ms. Baker, before I could

7    (indistinguishable.)

8         MS. BAKER: Well, I'm -- I know that it's been

9    referred to in the protective services report provided to

10   me by the People, in which the mother indicated that she

11   -- that her daughter had had lying issues and has been

12   found looking at pornographic pictures.  That's a

13   statement straight out of the CPS report related to this

14   investigation.

15        THE COURT: Okay.  So it would have to have

16   occurred --

17        MS. BAKER: Before the disclosure.

18        THE COURT: Before the disclosure, but would it

19   have to have occurred before the event itself?  In other

20   words, you're trying to show that she has knowledge of

21   sexual activity --

22        MS. BAKER:  -- that predates this alleged

23   incident, your Honor.

24        THE COURT: Yeah, but we don't know that yet;

25   right?

---

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 9 of 50

(Videotape, 10-03-14; 3:08:47)

1      MS. BAKER: I don't based on -- this is the
2 information I have.
3      THE COURT: Well, I guess I can't rule on that
4 until I know more.
5      MS. BAKER: And furthermore I'd place it on the
6 record that looking at pornography does not fall within
7 the rape shield statute.
8      MS. JOHNSON: I would just ask, I guess, for a
9 relevance argument that we question, take a moment to
10 question this witness outside of the hearing of the jury
11 as to this issue so the Court can determine the relevance
12 before the bell is rang.
13      THE COURT: Yeah, is she here?
14      MS. JOHNSON: No, she's not here.  She will be
15 present later this afternoon though.  I have an
16 appointment with her in my office.
17      THE COURT: Okay.  Well, let's just make it clear
18 there can be no mention of that until I've made a ruling,
19 so just ask -- and we can do that sometime during the
20 trial, we can iron that out, but it isn't anything you're
21 gonna have to -- you're going to get into in voir dire or
22 anything so ...
23      MS. BAKER: No.
24      THE COURT: Now I do want to rule on the other
25 motion, the motion that we had here earlier.

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 10 of 50

(Videotape, 10-03-14; 3:08:47)

1    MS. JOHNSON: Judge, if I may, that was only the
2    first half of my motion, and may I apologize for not
3    addressing it all at once.

4    THE COURT: Oh.

5    MS. JOHNSON: I also want to enforce the rule
6    against prior acts of lying from the victim under MRE 608.
7    I know Coun -- and I'm not fully aware of everything that
8    Counsel may or may not get into with her witnesses, but
9    there's been much talk in this case about the victim's
10   credibility and there are certain ways that that can be
11   addressed.  I want to make sure that they're only
12   addressed in lawful ways so that no extrinsic evidence of
13   specific acts of lying are offered for evidence.

14   THE COURT: You're just talking about her
15   character, her reputation for telling the truth?

16   MS. JOHNSON: Reputation is admissible.

17   THE COURT: An opinion.

18   MS. JOHNSON: An opinion, yes; however, specific
19   extrinsic evidence of acts is not.

20   THE COURT: Okay.  Well, it sounds like you --
21   that's what you're looking for is her mother is going to
22   say she's got a history of lying or something?

23   MS. BAKER: Well, your Honor, I think that 60 --

24   THE COURT: Which I think would be admissible.

25   MS. BAKER: 608 does allow if the Court

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

10

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 11 of 50

(Videotape, 10-03-14; 3:08:47)

1    determines that it affects her or shows charac -- any

2    character for untruthfulness and in this particular case

3    we do have that this family had a family meeting well

4    before this alleged incident in which they all got

5    together and talked about this young lady lying and I

6    believe it's related to her being caught lying at school,

7    and so they had created a family plan involving my client,

8    his girlfriend, the victim's mother, and her stepfather,

9    and all the children were present.  So this whole family

10   got together to address this victim's lying behavior.  So

11   I think it is relevant.

12              THE COURT: I do, too.  I think --

13              MS. BAKER: I think it -- and I think that if

14   there are, then I should be able to go into the extrinsic

15   evidence of that particular behavior.

16              THE COURT: You can't go into specific acts of

17   lying but if you want to offer testimony from family

18   members who offer the opinion that this girl was not

19   telling the truth, you know, was not a truthful person

20   back then or whenever this happened, I'll allow you to do

21   that, but I'm not gonna get into she lied about, you know,

22   Sammy Smith lookin' up her dress at school; okay?

23   We're --

24              MS. BAKER: Well, here's the one specific

25   incident that I do think needs to be addressed.  This

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 12 of 50

(Videotape, 10-03-14; 3:08:47)

1     young lady, according to her mother in this same report,

2     said that she set up a fake profile on Facebook as a boy

3     and was establishing relationships with these young girls

4     all over the state and the country, and that the mom then

5     had to go through and say this was a lie.  I think that

6     is -- that goes towards this young lady's truthfulness and

7     I think we should be able to bring that to the jury to

8     show that she does have this -- these specific acts that

9     go towards her truthfulness and lack of it.

10         THE COURT: Well, I didn't think you are allowed

11     to get into specific acts but maybe I have to reread it.

12         MS. BAKER: 608 gives you some discretion to do

13     so.

14         MS. JOHNSON: In 608 it gives you the discretion

15     to do so on cross-examination of the witness whose

16     truthfulness is being challenged or on cross-examination

17     of a witness who is vouching for the credibility of the

18     other witness.  So if the mother --

19         THE COURT: Yeah, but you can't get it in by

20     extrinsic evidence.

21         MS. JOHNSON: That's the only two incidences by

22     extrinsic evidence.  So if -- she can cross-examine the

23     victim about specific acts and if the mother were to get

24     up and say my daughter is a very truthful person, then she

25     could cross-examine the mother on those specific acts.

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

12

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 13 of 50

(Videotape, 10-03-14; 3:08:47)

1    THE COURT: If you put -- if you started -- if
2    you put truthfulness in play, --
3    MS. JOHNSON: Correct.
4    THE COURT: -- you know?  I get that.  Yeah, I
5    get that, too.
6    MS. JOHNSON: Those are the two exceptions for
7    608.
8    THE COURT: What did you say the first exception
9    was?
10    MS. JOHNSON: She can cross-examine the victim.
11    THE COURT: Yeah, but that's not extrinsic
12    evidence.  That's my point.  That's not extrinsic.
13    MS. JOHNSON: But on specific acts.
14    THE COURT: Yes, she can.
15    MS. JOHNSON: She can, yes.
16    THE COURT: Yes, I agree.
17    MS. JOHNSON: I agree.
18    THE COURT: Okay.  Maybe I should be clear.  I'm
19    not being clear.  Yes, you will be allowed to ask the
20    Defendant --
21    MS. BAKER: The victim.
22    THE COURT:  -- or the victim herself about
23    specific acts regarding her truthfulness, but if she
24    denies them, the specific acts, that's as far as that
25    goes.  But now as far as opinion and character, you can

*Mills Court Reporting,   1615 Sunset, N Muskegon, MI 49445   231-744-6823*

13

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 14 of 50

(Videotape, 10-03-14; 3:08:47)

1  bring in other witnesses to testify with regard to their

2  opinion -- with regard to her opinion or reputation, I

3  said character, opinion and reputation for truthfulness, I

4  will allow you to do that. If she puts into play the

5  truthfulness of the victim by vouching for her

6  credibility, then that witness who she gets that statement

7  from that she's an honest little girl you can say, well,

8  did you know she lied about this? Yes, you can do that

9  too.

10     MS. BAKER: I know that.

11     THE COURT: So those are the -- well, okay.

12  That's as far as -- okay. Well, that's what I'm saying.

13  That's my ruling.

14     MS. JOHNSON: There are two specific instances I

15  want to be clear about, the first being the Facebook one

16  that Ms. Baker just mentioned and the second --

17     THE COURT: Well, she can ask the girl about

18  that, but if the girl denies it, we're not gonna get

19  Facebook records out if that's what your question is.

20     MS. JOHNSON: And she cannot cross-examine the

21  mother on that.

22     THE COURT: Right. Okay, that's correct.

23     MS. JOHNSON: The second being there was an

24  accusation the victim's told -- actually Ms. Baker's

25  client that her stepfather was beating her mother.

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 15 of 50

(Videotape, 10-03-14; 3:08:47)

1    THE COURT: Wait a minute, wait a minute.  Give

2  that to me again.  What?

3    MS. JOHNSON: The victim told the Defendant --

4    THE COURT: Okay.

5    MS. JOHNSON: -- that her mother was being beaten

6  by her stepfather, and Ms. Baker can certainly cross-

7  examine the victim on that point but she cannot cross-

8  examine the mother on that point, she cannot have the

9  Defendant testify to that point, she cannot have anyone

10 else testify.

11   THE COURT: Well, that would be -- yeah, it's

12 extrinsic evidence.  Extrinsic is something other than

13 what you're getting out of the witness themselves and I

14 will not allow it, but I will allow the cross-examination

15 of the witness herself.

16   Okay.  Now are we done?  I'm gonna rule on the

17 motion with regard to this incident that took place that's

18 referenced in the police report that was attached to the

19 submission by the prosecution.  First of all, with regard

20 to the matter, you know, we get into this every time on

21 these things, the interplay between 768.27 and 404(B).

22 768.27 I find based on the rulings of the Supreme Court in

23 passing *Watkins*, 768.27, just so you know so we don't have

24 to beat this thing up every time, it trumps 404(B).

25 768.27(A) does by the Supreme Court's ruling and I don't

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 16 of 50

(Videotape, 10-03-14; 3:08:47)

1   see any material difference between 768.27 and 768.27(A)

2   in terms of its impact on the issue of whether or not this

3   is substantive or procedural, whether it interferes with

4   the Supreme Court's ability to make rules about the

5   admission of evidence and procedure in court. They're in

6   pari materia in that regard and so 768.27 does trump

7   404(B). Now, having said that, the Supreme Court was also

8   very clear when it ruled on 768.27(A) that it is

9   nevertheless subject to the scrutiny required by 403, and

10  that is whether or not the probative value is

11  substantially outweighed by the prejudicial effect.

12          Now with regard to this evidence that is being

13  offered here about this incident that occurred that the

14  Defendant related to the police following the

15  administration of his polygraph exam, the Court makes the

16  finding that the prior act must be relevant and the

17  prosecution is making the contention in this case that

18  it's relevant to his motive. I don't -- not based on what

19  this Defendant described. I don't find it is relevant to

20  a motive. His description is of an unsolicited, virtually

21  accidental activity that caused him to become sexually

22  aroused and I do disagree, however, with Ms. Baker's

23  reading that that wasn't the source of his sexual arousal

24  because he, according to the police report anyway that was

25  submitted, it said that Mr. Rainbolt told the officer this

*Mills Court Reporting, 1615 Sunset, N Muskegon, MI 49445 231-744-6823*

16

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 17 of 50

(Videotape, 10-03-14; 3:08:47)

1  caused him to be sexually aroused, this referring to the
2  activity that the victim engaged in.  And so that
3  definitely was the matter that did.  But you know what?  I
4  mean, if that's -- if that's offered to show somehow it's
5  relevant because it shows he was sexually attracted to
6  that victim, I mean ostensibly what this victim did
7  unsolicited, of her own volition without any input by the
8  Defendant, frankly anybody could have done and it may have
9  achieved the same result for this Defendant in this case.
10  It's not proof of a scheme or designed.  It's totally
11  dissimilar.  There's no penetration involved.  You
12  correctly pointed out how that was a big distinction in
13  the *Watkins* case.  I also realize that in the *Watkins* case
14  it was not only no penetration involved with this similar
15  act, it was also different victims, but in this case even
16  if you can say it's similar just because it's the same
17  victim, which I find is not a basis for saying it's
18  similar, these were totally different acts.  One was
19  totally -- and the only -- now it may have been a
20  different event, okay?  That event that happened, this
21  prior act, may have not gone down the way the Defendant
22  describes it, but the only evidence I have about how it
23  went down is the way the Defendant described it, so I have
24  to assume that's the evidence, and the evidence suggests
25  that it was unsolicitated -- unsolicited, was not

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 18 of 50

(Videotape, 10-03-14; 3:08:47)

1    premeditated, there was no penetration involved, so it's

2    totally dissimilar. It was several years earlier, two to

3    three years at least earlier. It was an isolated

4    incident. There are obviously several intervening acts

5    that occurred in between. The only measure of -- the only

6    criterion in terms of admissibility for scheme, plan, or

7    design under *Watkins* that this would perhaps be supported

8    -- would perhaps support admission is it would reflect on

9    credibility to some extent, although remotely and,

10   secondly, it is reliable because the Defendant admitted

11   it. Other than that, it doesn't meet any of the criteria

12   in *Watkins* for admission for scheme, plan, or design.

13   I've already ruled as far as what I think it says about

14   motive, which is certainly any probative value is greatly

15   outweighed by the prejudicial effect of that information,

16   so under 403 I find that it is not admissible.

17           Okay. I think we're ready to roll.

18           MS. BAKER: Thank you, your Honor.

19           THE COURT: Now I do want to say we have a DOC

20   case, I believe, set for Tuesday also, so that obvious --

21           MS. BAKER: That case is newer than this one.

22           THE COURT: Yeah, but it's -- is it an in-prison

23   offense?

24           MS. JOHNSON: Uh-huh, it is.

25           THE COURT: So the 180-day rule isn't kicking in

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 19 of 50

(Videotape, 10-03-14; 3:08:47)

1    on that one then?

2             MS. JOHNSON: I don't think so.

3             THE COURT: Okay.  Then this one would go.

4             MS. BAKER: It's an in-prison case.

5             THE COURT: Okay.  As long as it -- it was

6    possession of a shank or something?

7             MS. BAKER: No, it's an assault on an Aramark

8    employee.

9             THE COURT: Okay, there you go.  So that would

10    not be covered by the -- I won't worry about the 180-day

11    rule on that, so this case would be the priority case,

12    yes, agreed.  McCoy pled, so you know that, so that's off.

13    I don't know anything about Duskman.

14             MS. BAKER: He's on bond, I think.

15             MS. JOHNSON: He's out on bond and Mr. Johnson

16    and I have talked about it, however with this case taking

17    precedence, we're not worried about that one.

18             THE COURT: Okay.  Is there any possibility of

19    resolving that though?

20             MS. JOHNSON: I don't think so.

21             THE COURT: No?

22             MS. JOHNSON: No.

23             THE COURT: Okay.  Okay, then.  It looks like

24    Mr. Rainbolt is it.  How long are we going to take to try

25    that, do we know?

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 20 of 50

```
                                        (Videotape, 10-03-14; 3:08:47)
```

1        MS. JOHNSON: Three, four days?

2        MS. BAKER: (Indistinguishable.)

3        THE COURT: Wow.  Okay.  Really?  Okay.  All

4    right.

5                (Court adjourned at 3:30:14.)

6                        -oOo-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Mills Court Reporting,   1615 Sunset, N Muskegon, MI 49445   231-744-6823*

20

Certified Document - File Locator: MUS-J68GD6-A0C8FB2E - Monday, May 07, 2018 3:12 PM Eastern Daylight Time - Page 21 of 50

(Videotape, 10-03-14; 3:08:47)

STATE OF MICHIGAN            )
                            )    SS
COUNTY OF MUSKEGON          )


        I, certify that this transcript, consisting of 21 pages is
a complete, true, and correct transcript of the videotaped
proceedings and testimony taken in PEOPLE V RAINBOLT, 14-64458-
FC on October 3, 2014, Videotaped.
**Please note proper names and/or case names unknown to this
reporter are spelled phonetically and may not be correct.*



*Bobbie Springer*
Bobbie Springer
Certified Court Recorder 3408


**Mills Court Reporting,   1615 Sunset, N Muskegon, MI 49445   231-744-6823**

21